**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

ROBERT HOLLEY,

                Plaintiff,

v.                                 CIVIL ACTION NO.   2:23-cv-00652

WEST VIRGINIA DIVISION OF
CORRECTIONS AND
REHABILITATION, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Plaintiff's *Amended Complaint* (Document 1-15), *Defendants West Virginia Division of Corrections and Rehabilitation and Ronnie Thompson's Motion to Dismiss* (Document 4), *Defendants West Virginia Division of Corrections and Rehabilitation and Ronnie Thompson's Memorandum of Law in Support of Motion to Dismiss* (Document 5), the *Plaintiff's Response in Opposition to Defendant WVDCR's and Ronnie Thompson's Motion to Dismiss* (Document 6), *Plaintiff Robert Holley's Response to Defendants West Virginia Division of Corrections and Rehabilitation and Ronnie Thompson's Motion to Dismiss* (Document 7), and *Defendants West Virginia Division of Corrections and Rehabilitation and Ronnie Thompson's Reply to Plaintiff's Response to Defendants' Motion to Dismiss Plaintiff's Complaint* (Document 10).   For the reasons stated herein, the Court finds that the motion should be granted in part and denied in part.

## FACTUAL ALLEGATIONS

On January 20, 2022, Plaintiff Robert Holley was incarcerated at South Central Regional Jail ("SCRJ") and housed in pod C3.[1]   On January 22, 2022, medical personnel entered the pod to provide medical treatment, at which time Mr. Holley got in line to receive an inhaler treatment.[2] While in line, Mr. Holley told an unknown guard and medical staff that he was having trouble breathing and needed to move to the front of the line.   Although he "could barely breathe at that point," the unknown guard told Mr. Holley to wait his turn.   (Am. Compl. at ¶ 18) (Document 1-15.)   Following repeated requests, the guard said that he "had enough of the plaintiff asking to move to the front of the line" and grabbed him by the arm, removed him from the line, and took him back to his cell.   (*Id.* at ¶ 19.)   The guard then slapped Mr. Holley in the face, told him to stop complaining, and told him that he would not receive his inhaler treatment.   At this time, the guard discovered "hooch"[3] in the cell Mr. Holley shared with other inmates.   The guard asked him if the hooch belonged to him, and Mr. Holley responded that it did not.   The guard exited the cell and asked Mr. Holley if he was a snitch in front of the other inmates.   Mr. Holley responded that he was not, to which the guard yelled that Mr. Holley was "ratting out" his cellmate and that "they don't take too kindly to rats in here."   (*Id.* at ¶ 25.)   Shortly thereafter, the medical personnel left, and the guard left with the confiscated hooch.   Approximately thirty minutes later, Mr. Holley was attacked by multiple inmates.   He suffered severe injuries to his head and body, including a fractured jaw, multiple nose fractures and a fracture to his eye.   He alleges he was left

---

1 Mr. Holley alleges he was incarcerated on a misdemeanor charge but placed in a felony pod due to overcrowding.
2 Mr. Holley suffers from severe asthma and "medical lung problems."   (Am. Compl. at ¶ 16.)
3 "Hooch" colloquially refers to alcohol made in the toilet of a prison cell.

"negligently unsupervised" for hours both during and after his attack.   (*Id.* at ¶ 35.)   At some point he was taken to medical and then sent to the hospital for surgery.   (*Id.* at ¶ 37.)

Mr. Holley initially filed suit in the Kanawha County Circuit Court.   He moved for leave to amend his *Complaint* to add federal claims and a new defendant, Delantay Boozer,[4] the alleged "main perpetrator of the physical beating" Mr. Holley endured at SCRJ.   (Pl.'s Mot. Leave Am. Compl. at 2) (Document 1-15.)   Following receipt of the motion to amend and the proposed *Amended Complaint*, Defendants West Virginia Division of Corrections and Rehabilitation ("WVDCR") and Superintendent Ronnie Thompson timely removed this action on the basis of federal question jurisdiction.   Inasmuch as the Defendants do not oppose amendment, the Court accepts the proposed *Amended Complaint* as the operative pleading in this matter and will have it filed on the public docket.

The Plaintiff asserts the following causes of action: Count I – Negligence, as to all Defendants; Count II – Violations of the U.S. Constitution and Federal Law; Count III – Intentional Infliction of Emotional Distress; Count IV – Extreme and Outrageous Conduct; Emotional Distress; Count V – Negligent Hiring, Retention and Supervision; Count VI – Cruel and Unusual Punishment – Federal and State; and Count VII – Unconstitutional Policies and Practices.   It appears that Counts II, III and IV are alleged as to all Defendants; Count V is alleged only as to WVDCR and Mr. Thompson; and Counts VI and VII are alleged only as to WVDCR.[5]   The Plaintiff seeks compensatory and punitive damages and attorneys' fees.   He seeks recovery from

---

4 Mr. Boozer has yet to appear in this action.   Indeed, the record indicates that the Defendants filed their notice of removal prior to any ruling by the state court on the motion to amend, and thus Mr. Boozer has not yet been served.
5  It is unclear which Counts are alleged against Mr. Boozer.

the West Virginia state agency defendants only up to the limits of any applicable insurance policies.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal*, 556 U.S. at 679. Furthermore,

the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis*, 588 F.3d at 193 (quoting *Twombly*, 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis*, 588 F.3d at 193 (quoting *Twombly*, 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## DISCUSSION

The Defendants advance several arguments in support of dismissal. First, they contend the *Amended Complaint* fails to allege sufficient facts to support any of the claims against WVDCR or Superintendent Thompson. In addition, they assert that the Plaintiff cannot maintain Section 1983 claims against either Defendant because they are not "persons" subject to suit under the statute. To the extent the Plaintiff alleges the Defendants are vicariously liable for the conduct of the John Doe defendants under Section 1983, the Defendants argue that vicarious liability does not

exist under Section 1983 and that he has not alleged sufficient facts to support a theory of supervisory liability.   They further maintain that they are entitled to qualified immunity as to each claim and that the Plaintiff's state constitutional claims fail as a matter of law.

The Plaintiff broadly responds that he has pled facts "sufficient to put Defendants on notice of the legal claims against them and . . . to allow this Court to make the reasonable inference that each Defendant is liable."   (Pl.'s Resp. at 5.)   He argues that the Defendants are "correctly incorporated" under Section 1983, and that they are not entitled to qualified immunity.   He contends both Defendants are vicariously liable for the negligent, tortious, and other unlawful conduct of the John Doe defendants under theories of *respondeat superior* and supervisory liability.   He clarifies that his allegation of unconstitutional policies and practices is a claim for failure to train under *Monell v. New York City Dep't Soc. Servs.*, 436 U.S. 658 (1978).

The Defendants reiterate many of their arguments in reply.   They add that they are not subject to a *Monell* claim and contend the Plaintiff does not meaningfully engage with their arguments regarding the state constitutional claims and direct liability under Section 1983.

A.     *Count I – Negligence*

Count I alleges that WVDCR and Superintendent Thompson were both negligent, and that they are also vicariously liable for the negligent conduct of the John Doe defendants.   The Defendants argue that qualified immunity "operates to bar claims of mere negligence against public employees and agencies."   (Defs.' Reply at 8.)   WVDCR appears to extend this position to its argument in opposition to vicarious liability.   (*See id.* at 8–9.)   Thompson maintains that he is not the employer of the John Doe defendants and thus cannot be held vicariously liable for their conduct under a theory of *respondeat superior*.

6

To succeed on a negligence claim, the plaintiff must establish by a preponderance of the evidence that (1) "the defendant owes [the plaintiff] a duty," (2) "there was a negligent breach of that duty," and (3) "injuries received by the plaintiff resulted proximately from the breach of the duty." *Jones v. Logan Cnty. Bd. of Educ.*, 881 S.E.2d 374, 383 (W. Va. 2022) (citing *Webb v. Brown & Williamson Tobacco Co.*, 2 S.E.2d 898, 899 (W. Va. 1939)).   Relevant here, The West Virginia Supreme Court of Appeals has held:

> In the absence of an insurance contract waiving the defense, the doctrine of qualified or official immunity bars a claim or mere negligence against a State agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29–12A–1, *et seq.*, and against an officer of that department acting within the scope of his or her employment, with respect to the discretionary judgments, decisions, and actions of the officer.

Syl. Pt. 7, *Jarvis v. W. Va. State Police*, 711 S.E.2d 542 (W. Va. 2010).   Inasmuch as the *Amended Complaint* asserts a claim of negligence against WVDCR, the same must be dismissed in light of *Jarvis*.   As to Thompson, the facts alleged are insufficient to support a direct claim of negligence. The Plaintiff maintains that Thompson "negligently failed to adequately protect the Plaintiff under the U.S. and West Virginia Constitution that guarantees that all prisoners have the right to be housed in safe conditions and not be subjected to violence and sexual abuse."[6]   (Am. Compl. at ¶ 41.)   However, the Plaintiff fails to identify any specific conduct by Thompson which might have breached a purported duty to protect.   Accordingly, the factual allegations are insufficient to support a negligence claim against Thompson.

The Court next considers whether the Plaintiff has stated a claim for negligence against the Defendants under a vicarious liability theory.   "The fundamental rule in West Virginia is that if it can be shown that an individual is an agent and if he is acting within the scope of his employment

---

[6] The Court notes that the factual allegations do not appear to include a claim regarding sexual abuse at SCRJ.

7

when he commits a tort, then the principal is liable for the tort as well as the agent."  *Courtless v. Jolliffe*, 507 S.E.2d 136, 139–40 (W. Va. 1998) (quoting *Barath v. Performance Trucking Co., Inc.*, 424 S.E.2d 602, 605 (W. Va. 1992)).   The question as to whether an act is performed within the scope of employment is necessarily fact-determinative, and thus more appropriately considered at summary judgment.  *See* Syl. Pt. 1, *Spencer v. Travelers Ins. Co.*, 133 S.E.2d 735 (W. Va. 1963); *Griffith v. George Transfer & Rigging, Inc.*, 201 S.E.2d 281, 288 (W. Va. 1973); *W. Va. Regional Jail and Correctional Facility Auth. v. A.B.*, 766 S.E.2d 751, 768 (W. Va. 2014) ("[W]hether an agent is 'acting within the scope of his employment' ... is generally a question of fact for the jury.").   The *Amended Complaint* alleges that the John Doe defendants were "employees, representatives, or agents" of WVDCR when the Plaintiff was as SCRJ.   (*See* Am. Compl. at ¶ 5.)   However, to the extent that Count I alleges a claim of negligence against the John Doe officer who interacted with Mr. Holley at SCRJ, a summary determination that he was acting within the scope of his employment as to any negligent conduct would be premature under the facts alleged.   Thus, accepting as true all factual allegations in the *Amended Complaint* and drawing all reasonable inferences therefrom in the Plaintiff's favor, the Court finds that the Plaintiff has plausibly alleged a vicarious liability claim against WVDCR as to Count I based upon the existence of an employer-employee relationship between WVDCR and the John Doe officer.

> B.   *Count II – Violations of the U.S. Constitution and Federal Law; and*
> *Count VI – Cruel & Unusual Punishment (Federal and State)*

Counts II and VI allege similar federal and state constitutional violations pursuant to Section 1983.   Specifically, Count II alleges "a federal violation in 42 U.S.C. §1983 or any other related federal statute" and specifically asserts that the Defendants violated Mr. Holley's rights under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments.   (Am. Compl. at ¶¶ 45,

46.)   Count VI alleges that WVDCR, through the conduct of its employees and officials, violated the "prohibitions in the U.S. and West Virginia Constitution against cruel and unusual punishment and the deprivation of life without due process and a jury trial" by failing to supervise inmates and allowing Mr. Holley to be attacked in the pod.   The Defendants argue that they are not "persons" subject to suit under Section 1983 because WVDCR is a state agency and Thompson is a state official being sued in his official capacity.   They further assert that there is no vicarious liability under Section 1983 and that the Plaintiff failed to allege sufficient facts to support a claim of supervisory liability as to Thompson.   Mr. Holley broadly responds that he has "clearly and correctly" pled that WVDCR and Thompson are "persons correctly incorporated under [Section] 1983."   (Pl.'s Resp. at 5.)   He maintains that he has sufficiently pled the requisite elements of a supervisory liability claim.   He vaguely asserts that the "jails in West Virginia have a clear history of supervisors having knowledge of correctional officers [sic] misconduct, showing indifference to this conduct and a causal link between the injury to the plaintiff and the supervisor's inaction." (Pl.'s Resp. at 7.)   He argues that he has met his burden of "showing that the WVDCR and Thompson have permitted corrections officers to allow this pervasive and unreasonable risk" to him. (*Id.* at 8.)

The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).   This holding extends to "governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes."  *Id.* at 70.   WVDCR is a governmental entity operating as an "arm of the State" of West Virginia.  *See* W. Va. Code § 15A-3-2 (establishing WVDCR within the Department of Military Affairs and Public Safety).   It is undisputed that Thompson is the

9

superintendent of SCRJ, a facility operated by WVDCR, that he was acting in his capacity as superintendent during the underlying events.[7]   Accordingly, the Court finds that the Plaintiff cannot state a claim for relief against WVDCR or Thompson pursuant to Section 1983 because they are not "persons" subject to suit under the statute.

Regarding the Plaintiff's vicarious liability claims, it is well established that "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."   *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983)).   Accordingly, the Plaintiff cannot state a claim against WVDCR for vicarious liability under Section 1983.

As to Superintendent Thompson, the Fourth Circuit has held that "supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984).   In this context, liability is not premised on the theory of *respondeat superior*, but instead rests on "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care."   *Id.* at 372–73.   The Fourth Circuit has articulated three elements to establish supervisory liability under § 1983:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an

---

7 The Court notes that the *Amended Complaint* names Thompson as "Superintendent of the South Central Regional Jail" but does not specify whether he is being sued in his official or individual capacity.   Nevertheless, the Plaintiff does not dispute the Defendants' assertion that Thompson was acting in his official capacity during the underlying incident, and the *Amended Complaint* is devoid of specific factual allegations against Thompson to support the claims alleged against him therein.

affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citations omitted).

Mr. Holley alleges no facts to support a finding that Superintendent Thompson would have had "actual or constructive knowledge" of the unnamed guard's conduct that posed "a pervasive and unreasonable risk of constitutional injury" to individuals like Mr. Holley.  The *Amended Complaint* does not name the guard, nor does it allege a known history of abusive behavior by him or otherwise provide facts to support a finding that the Defendants would or should have been generally aware of prior similar misconduct by this correctional officer or others.  *Compare Braswell v. Jividen*, No. 2:20-CV-00872, 2021 WL 5890667, at *5 (S.D.W. Va. Dec. 13, 2021) (Berger, J.) (finding first element of *Shaw* satisfied where the amended complaint alleged specific facts showing a "pattern and practice" of excessive force by named correctional officer that was known by supervisors and not addressed in any form).  Without sufficient facts to support a finding that Thompson had actual or constructive knowledge of the unknown guard's conduct and associated risks, the Plaintiff cannot meet his burden.   Thus, the Court finds that the Plaintiff has not plausibly pled a supervisory liability claim as to Thompson.

Count II also ostensibly asserts claims for violations of the West Virginia Constitution under a theory that the rights guaranteed by the federal and state Constitutions "are so parallel that the violation of one similarly would constitute the violation of the other."[8]  (Am. Compl. at ¶ 48.) Likewise, Count VI alleges a cause of action for "cruel and unusual punishment" in violation of

---

8 Although the specific sections alleged to be violated are not identified in the Amended Complaint, the Defendants point to Article III, Sections 1, 5, 10, and 14, and Article XII, Section 1.   The Court notes that Article XII, Section 1 is titled "Education," and appears irrelevant to this matter.  Accordingly, the Court does not address that section. Nevertheless, the Plaintiff does not appear to dispute that these sections are the violations implied in Count II.

11

the West Virginia Constitution.   The Defendants argue that these state constitutional claims fail as a matter of law because implied causes of action "do not exist" under the West Virginia Constitution.   (Defs.' Mot. Dismiss at 17).   The Plaintiff does not respond to this argument.

The Plaintiff's state constitutional claims appear, like his federal constitutional claims, to be predicated upon the unknown correctional officer's use of excessive force.   State constitutional rights are not enforceable under Section 1983.   *See West v. Atkins*, 487 U.S. 42, 48 (1988) (to state a claim under Section 1983, a plaintiff must allege, *inter alia*, the violation of a right secured by the Constitution and laws of the United States).   Because the Plaintiff appears to bring each of his state constitutional claims pursuant to Section 1983, they are legally insufficient on that basis alone.   *See Harper v. C.O. Joseph Barbagallo*, No. 2:14-CV-07529, 2016 WL 5419442, at *12 (S.D.W. Va. Sept. 27, 2016) (Johnston, J.).

Nevertheless, the Court further notes that most of the implied sections of the state constitution do not independently give rise to a cause of action.   *See, e.g.*, *Krein v. W. Va. State Police*, No. 2:11-cv-00962, 2012 WL 2470015, at *6 n.6 (S.D. W. Va. June 27, 2012) (Copenhaver, J.) (Article III, Section 1, entitled the Bill of Rights, "is a statement of basic principle" and does not independently give rise to a cause of action. (quoting *Allen v. State Human Rights Comm.*, 324 S.E.2d 99, 109 (W. Va. 1984))); *Smith v. Oiler*, No. CV 3:21-0649, 2022 WL 385499, at *2 (S.D.W. Va. Feb. 8, 2022) (Chambers, J.) (same); *Fields v. Mellinger*, 851 S.E.2d 789, 799 (W. Va. 2020) ("West Virginia does not recognize a private right of action for monetary damages for a violation of Article III, Section 6 of the West Virginia Constitution."); *Anderson v. Barkley*, No. 2:19-CV-00198, 2020 WL 7753290, at *2 (S.D.W. Va. Dec. 29, 2020) (Copenhaver, S.J.) (regarding the state analog for the Eighth Amendment, "[a]lthough *Fields* addressed Section

6, rather than Section 5, of Article III, several facets of the decision strongly suggest that its analysis applies with equal force to Section 5.").   Moreover, Article III, Section 10 is "West Virginia's equivalent to the federal Due Process Clause." *Murray v. Matheney*, No. 2:13-CV-15798, 2017 WL 4849113, at *8 (S.D.W. Va. Oct. 26, 2017) (Goodwin, J.) (citation and internal quotation omitted).   Due process claims are not cognizable where a specific constitutional provision governs the alleged conduct.   *See United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.").   As previously noted, all the Plaintiff's purported state constitutional claims appear to be predicated on allegations of excessive force.   (*See* Am. Compl. at ¶ 45.)   It is well established in this district that "claims of excessive force are more appropriately analyzed under the more textually specific Fourth [or Eighth] Amendment (and its state analog) than the more generalized due process clause." *Krein*, 2012 WL 2470015 at *6, n.6; *see also Nutter v. Mellinger*, 2:19-cv-00787, 2020 WL 401790, at *6 (S.D. W. Va. Jan. 23, 2020) (Goodwin, J.); *Harper*, 2016 WL 5419442 at *13.   Accordingly, the Court finds that Count II and Count VI must be dismissed as to Defendants Thompson and WVDCR.

C.   *Count III – Intentional Infliction of Emotional Distress*[9]

The Defendants argue that the Plaintiff fails to establish a claim for intentional infliction of emotional distress against them because he "has not pleaded any intentional or reckless action

---

9 Count IV alleges a cause of action for "Extreme and Outrageous Conduct; Emotional Distress."   Inasmuch as West Virginia treats the torts of outrage and intentional infliction of emotional distress as the same cause of action, the Court finds that Count IV is duplicative of Count III and does not address it herein.   *See Philyaw v. E. Associated Coal Corp.*, 633 S.E.2d 8, 13 n.7 (W. Va. 2006) (intentional infliction of emotional distress is also known as the tort of outrage in West Virginia); Syl. Pt. 2, *Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419 (W. Va. 1998) (proof of "extreme and outrageous conduct" is an element of an intentional infliction of emotional distress claim).

by these Defendants." (Defs.' Mot. Dismiss at 7.) They contend the Plaintiff fails to allege that WVDCR and Thompson engaged in any conduct "beyond hiring the unknown correctional officer and being the superintendent at SCRJ," and that such conduct is not sufficiently atrocious, intolerable, or extreme and outrageous as to exceed the bounds of decency. (Defs.' Mot. Dismiss at 7.) The Plaintiff maintains that he "clearly" pled this claim as to all defendants. Although Count III does not explicitly allege a theory of vicarious liability, the Plaintiff further asserts that "[o]bviously, with complete control of the jail and the subordinate corrections officers, Thompson is liable for their atrocious, intolerable and extreme actions." (Pl.'s Resp. at 5.) The Defendants respond that the factual allegations do not include any specific conduct attributable to Thompson, and they note that the Plaintiff does not address the sufficienccy of the allegations as to WVDCR. (Defs.' Reply at 3.)

In West Virginia, a plaintiff must allege the following to state a claim for intentional infliction of emotional distress:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419, 425 (W. Va. 1998)). "Whether the alleged conduct may be reasonably considered outrageous is a threshold question for the court"; whether the conduct "is in fact outrageous is a question for the jury." *Gilco v. Logan Cnty. Commission*, No. 11–32, 2012 WL 3580056, at *5 (S.D. W. Va. Aug. 17, 2012) (Copenhaver, J.) (citing Syl. Pt. 4, *Alcon Labs*, 504 S.E.2d at 419). "It is difficult to overstate the high burden of proof required to

sustain a tort claim for intentional infliction of emotional distress." *Pegg v. Herrnberger*, 845 F.3d 112, 122 (4th Cir. 2017).   It only covers conduct "so outrageous in character, so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Keyes v. Keyes*, 193 S.E.2d 693, 696 (W. Va. 1990) (quoting *Harless v. First Nat'l Bank*, 289 S.E.2d 692, 703–04 n.20 (W. Va. 1982)).

Viewed objectively and in the light most favorable to the Plaintiff, his claim as to WVDCR and Thompson does not meet the legal threshold.   Regarding Thompson, the Amended Complaint alleges only that he is the superintendent of SCRJ.   The Plaintiff alleges in his written submissions that Thompson's position put him in "complete control" of SCRJ and subordinate correctional officers.   Actors in positions of actual or apparent authority have been held liable for "extreme abuse of their position."   *See* Restatement (Second) of Torts § 46 (1965).   However, the Plaintiff's vague allegations of Thompson's general acts or omissions are not sufficiently extreme and outrageous to support a claim against him.   *See Herrnberger*, 845 F.3d 112 at 122 (listing examples of conduct found sufficient or insufficient to support a claim for intentional infliction of emotional distress in West Virginia).   Further, the mere inclusion of WVDCR, without more, is insufficient to satisfy the federal pleading standard.   Accordingly, the Court finds that the Plaintiff has not sufficiently alleged that WVDCR or Thompson acted recklessly or with the intention of inflicting emotional distress on him.

Although not explicitly stated in Count III, the Plaintiff alleges in Count V and appears to allege in his written submission that the Defendants are also vicariously liable for the tortious conduct of the John Doe defendants.   (Am. Compl. at ¶ 68; Pl.'s Resp. at 5).   WVDCR argues that it is immune from the vicarious liability claim because the John Doe correctional officer's

15

actions, as detailed in the *Amended Complaint*, constitute intentional torts outside the scope of employment. Thompson maintains that he is not the employer of the John Doe defendants and cannot be held vicariously liable for their actions under a theory of *respondeat superior*.

The West Virginia Supreme Court of Appeals has established that the State of West Virginia and its agencies are immune from vicarious liability for torts committed by officials or employees "determined to have been acting outside the scope of [their] duties, authority, and/or employment." Syl. Pt. 12, *W. Virginia Reg'l Jail & Corr. Facility Auth. v. A.B.*, 766 S.E.2d 751, 756 (W. Va. 2014). Courts within this district have repeatedly found that claims of this nature, involving intentional torts and/or constitutional violations for the excessive use of force against inmates, allege conduct outside the scope of employment. *See, e.g.*, *Shawn Holcomb v. West Virginia Division of Corrections and Rehabilitation, et al.*, No. 2:20-cv-767, 2021 WL 442918, at *2 (S.D.W. Va. Sept. 27, 2021) (Copenhaver, S.J.); *Jeffers v. Aldridge*, No. CV 3:22-0268, 2023 WL 2266140, at *4 (S.D.W. Va. Feb. 28, 2023) (Chambers, J.) (collecting cases) ("Although their positions as correctional officers may give them the opportunity to commit these acts, such opportunity does not bring those acts within the scope of employment.").

Mr. Holley alleges that a John Doe correctional officer forcibly removed him from the medical line, slapped him across the face in his cell without provocation, and intentionally called him a "rat" in the presence of other inmates, causing him to be beaten. "[C]ourts have routinely held that intentional tortious conduct found in scenarios such as this one is outside a correctional officer's scope of employment." *Roberts v. Void*, No. 2:23-cv-40, 2023 WL 3903918, at *4 (S.D.W. Va. June 8, 2023) (Berger, J.) (collecting cases). Therefore, to the extent Count III

16

alleges a claim of vicarious liability for the intentional tortious conduct of the John Doe defendant, it must be dismissed as to WVDCR and Thompson.

D.      *Count V – Negligent Hiring, Retention & Supervision*

Count V asserts that WVDCR negligently hired and/or retained Superintendent Thompson and the John Doe defendants, and that WVDCR and Thompson failed to properly supervise the John Doe defendants.   To prevail on a negligent hiring or retention claim, the Plaintiff must establish that the employer failed "to conduct a reasonable investigation into the employee's background vis a vis the job . . . and the possible risk of harm." *State ex rel. W. Virginia State Police v. Taylor*, 499 S.E.2d 283, 289 n.7 (W. Va. 1997); *see also McCormick v. W. Virginia Dept. of Pub. Safety*, 503 S.E.2d 502, 506 n.5 (W. Va. 1998).   Otherwise stated, the question is: "should the employer have reasonably foreseen the risk caused by hiring or retaining an unfit person?"   *Id*. The duty with respect to hiring increases "as the risks to third persons associated with a particular job increase."   *McCormick*, 503 S.E.2d at 507 (1998).

The Plaintiff has not pled sufficient facts to establish a claim of negligent hiring or retention as to WVDCR.   He alleges only that WVDCR "was negligent in the hiring and/or retention of Defendant Thompson; the John Doe Defendants and other employees, representatives and agents that caused or contributed to the inadequate care and injuries to" him.   (Am. Compl. ¶ 66.) Although "detailed factual allegations" are not required, the Amended Complaint is devoid of the "further factual enhancement" necessary to support the Plaintiff's assertions.   *See Twombly*, 550 U.S. at 555, 557 (2007); *see also, e.g.*, *Merritt v. Casto*, No. 2:22-CV-00556, 2023 WL 2589679, at *6 (S.D. W. Va. Mar. 21, 2023) (Berger, J.) (facts sufficient where plaintiff alleged that employer hired/retained employee despite knowledge of employee's prior dangerous misconduct,

and that reasonable supervisor would have known that hiring/retaining employee would result in future such incidents).   Without more, the Plaintiff has not sufficiently pled that WVDCR should have reasonably foreseen the risk of harm caused by hiring or retaining either Mr. Thompson or the John Doe defendants.

The Defendants likewise argue that the Plaintiff fails to state a claim for negligent supervision of the John Doe defendants.   "Under West Virginia law, negligent supervision claims must rest upon a showing that the employer failed to properly supervise its employees and, as a result, those employees proximately caused injury to another." *Ferrell v. Santander Consumer USA, Inc.*, 859 F. Supp. 2d 812, 818 (S.D. W. Va. 2012) (Copenhaver, J.) (citing *Taylor v. Cabell Huntington Hosp., Inc.*, 538 S.E.2d 719, 725 (W. Va. 2000)).   For the same reason that his claims of negligent hiring and retention are inadequate, the Plaintiff's negligent supervision claim is inadequately pled.   The Plaintiff alleges only that WVDCR "has a duty to its inmates to provide adequate supervision and appropriate care" and that WVDCR and Thompson's failure to "properly supervise the John Doe corrections officer defendants and other employees, representatives and agents" caused in the Plaintiff's injuries.   (Am. Compl. ¶¶ 67–69.)   The lack of further factual enhancement renders the Plaintiff's allegations conclusory and insufficient to establish a duty requiring WVDCR to take reasonable supervisory action with respect to Mr. Thompson. Likewise, the facts alleged are insufficient to establish a duty on WVDCR or Mr. Thompson to take reasonable action as to the John Doe defendants.   *See, e.g.*, *Fields v. King*, 576 F. Supp. 3d 392, 407 (S.D. W. Va. 2021) (Johnston, J.) (Plaintiff's "factual allegations, taken as true, should have served to put [employer] on notice of [employee's] alleged propensity for using excessive force or not following appropriate protocol."); *B.E. v. Mount Hope High Sch.*, No. 2:11-CV-00679,

2012 WL 3580190, at *7 (S.D. W. Va. Aug. 17, 2012) (Goodwin, C.J.) ("actual notice" of similar instances of predatory behavior sufficient to establish duty to take reasonable supervisory action).

        E.      *Count VII – Unconstitutional Policies and Practices*

The Defendants finally argue that the Plaintiff's claim for "unconstitutional policies and practices" must be dismissed because it does not exist at law, and, regardless, the *Amended Complaint* fails to identify any policies which are allegedly unconstitutional. The Plaintiff clarifies that this claim is for inadequate training under *Monell v. New York City Department of Social Services* and maintains that it is sufficiently pled. The Defendants respond that *Monell* is inapplicable here.

In *Monell*, the Supreme Court concluded that Congress intended "municipalities and other local government units to be included among those persons to whom § 1983 applies." 436 U.S. 658, 690 (1978). The Court further explained that "[l]ocal governing bodies [ ] can be sued directly under § 1983 for monetary, declaratory, or injunctive relief, where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* As previously noted, WVDCR and Superintendent Thompson are not "persons" subject to suit under 42 U.S.C. § 1983. *See Will*, 491 U.S. at 67. Accordingly, the Court finds that neither Defendant is subject to a *Monell* claim and Count VII should be dismissed.

**CONCLUSION**

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Defendants West Virginia Division of Corrections and Rehabilitation and Ronnie Thompson's Motion to Dismiss* (Document 4) be **DENIED** as to the vicarious liability claim asserted in Count

I against the West Virginia Division of Corrections and Rehabilitation and **GRANTED** as to the remaining claims.  The Court further **ORDERS** that the Clerk file the *Amended Complaint* (Document 1-15) on the public docket as the operative pleading in this matter.

    The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

           ENTER:    January 31, 2024

           IRENE C. BERGER
        UNITED STATES DISTRICT JUDGE
      SOUTHERN DISTRICT OF WEST VIRGINIA